## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BECKLEY DIVISION

TERRY ROSEBORO,

                Plaintiff,

v.                                    CIVIL ACTION NO.  5:08-cv-01433

CHARLES FELTS[1], et al.,

                Defendants.

## MEMORANDUM OPINION AND ORDER

The Court has reviewed Plaintiff's [Second] Amended Complaint (Document 112), wherein he alleges that "FCI Beckley's Prison Medical Staff[] fail[ed] to properly diagnose his aliments which eventually led to [his] suffering a stroke, which resulted in 'open heart surgury" [sic] and permanent brain damage."  The Court has also reviewed the United States' Motion to Dismiss Defendants Charles Felts, Dominic McLain and Jeff Rowe and Substitute the United States ("Mot. to Dismiss Ind. Defs.") (Document 114), the United States' Motion to Dismiss for Failure to State a Claim ("U.S. Mot. to Dismiss") (Document 116), Defendants' Amended Motion to Dismiss and/or for Summary Judgment (Document 120), and the memoranda in support thereof (Documents 115, 117, 121).  The Court has also reviewed the Plaintiff's Motion to Deny the United States's [sic] Motion to Dismiss and Substitute (Document 135).[2]  After careful consideration of the motions and for the reasons set forth herein, the Court finds that Plaintiff's claims as stated in the [Second] Amended Complaint are fatally flawed.

---

[1]  In his original Complaint, Plaintiff incorrectly named Charles Phelps, instead of Charles Felts, as the Warden of FCI-Beckley.

[2]  As discussed herein, the Court will construe this *pro se* filing as an opposition to Defendants' motions to dismiss (Documents 114, 116).

## I.  FACTUAL BACKGROUND & PROCEDURAL HISTORY

Plaintiff, Terry Roseboro, is a federal inmate currently housed at the Federal Correctional Institution-Beckley, ("FCI-Beckley") located in Beaver, West Virginia.  On July 9, 2001, Plaintiff was sentenced in the Western District of North Carolina to a  term of imprisonment of one hundred eighty-eight (188) months to be followed by five (5) years of supervised release for possessing with the intent to distribute cocaine and cocaine base, in violation of 21 U.S.C. § 841(a).[3]  By Standing Order  filed in this case on December 18, 2008, this action was referred to the Honorable R. Clarke VanDervort, United States Magistrate Judge, for submission to this Court of proposed findings of fact and recommendation for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B). (Document 3). Pursuant to the referral, the Magistrate Judge has set forth a detailed account of the facts alleged in this matter and, thus, a full recitation of the facts is not required herein. (*See* Proposed Findings and Recommendation ("PF&R") (Document 73); Order Granting Application to Proceed Without Prepayment of Fees and Denying Motion for Appointment of Counsel ("Screening Review") (Document 17)).  However, the Court will provide a *brief* overview of Plaintiff's allegations in this civil action.

At all times relevant to the instant pleading, Plaintiff was assigned to FCI Beckley. Beginning on January 12, 2007, Plaintiff sought medical attention at the prison for complaints of pain in his left arm and foot, gout in his legs, and a rash found on both his hands and feet.  Lab tests were ordered and Plaintiff was treated with pain medication.  In four subsequent sick call visits in January and February 2007, Plaintiff's rash was observed to have improved, but he still experienced pain in his left arm and leg.  He was, again, provided pain medication, but no cardiac tests were

---

[3]    According to the Bureau of Prison's inmate locator, Plaintiff is scheduled for release on May 6, 2014.

performed.  On March 7, 2007, Plaintiff was sent to the Prison's medical unit by his supervisor when he complained of dizziness, sweating, nausea and shortness of breath.  He was prescribed additional pain mediation and a medical excuse to rest in bed for the remainder of the day.  One day later, as he walked to the cafeteria, Plaintiff collapsed on the sidewalk.  He was later taken to the Prison's medical unit.  Following an EKG, Plaintiff was sent to Beckley Appalachian Regional Hospital, a local hospital.  Plaintiff suffered a "paralyzing stroke" while he was being admitted. (Complaint for the Violation of Civil Rights Under 42 U.S.C. § 1983 ("Orig. Compl.") (Document 2) at 12.)  Also, during the hospital visit, a myxoma was discovered on the left atrial of Plaintiff's heart.  Upon receiving treatment and therapy, Plaintiff was transferred to the Charleston Area Medical Center for open heart surgery for the left atrial myxoma resection.  At some point, Plaintiff developed a disorder called Aphasia which affected the language side of the brain.  Plaintiff had to learn to walk, talk, and feed himself again. Plaintiff remained hospitalized or in a rehabilitation facility for nearly nine months.  Thereafter, Plaintiff filed an administrative tort claim with the Federal Bureau of Prisons ("BOP") in which he claimed government liability in the amount of $500,000.00 for personal injury. On October 31, 2008, the BOP denied Plaintiff's administrative complaint, finding that his medical records revealed his condition had been monitored and he had been provided with appropriate medical care.

Thereafter, on December 12, 2008, Plaintiff initiated this civil action alleging that Dominic McLain, Medical Doctor, Jeff Rose, APRN, and Charles Felts, then Warden of FCI Beckley, are liable for his injuries in that Defendants demonstrated a deliberate indifference to his medical needs, maintained a sick call policy that utilized handwritten notes rather than modern computerized indices, mis-diagnosed his medical condition, and failed to perform cardiac testing. On June 10,

3

2009, Plaintiff sought to amend his complaint to allege a claim under the Federal Tort Claims Act,
28 U.S.C. § 2671 et. seq., as well as his entitlement to relief pursuant to *Bivens v. Six Unknown
Federal Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  Plaintiff, among other things,
sought to add the United States of America and Peter D. Keisler, United States Attorney General,
as party defendants.  On February 17, 2010, the assigned Magistrate Judge permitted Plaintiff to
amend his complaint.  Additionally, the Magistrate Judge concluded, pursuant to 28 U.S.C. § 1915A,
that Plaintiff alleged that Defendants violated his rights under the Eighth Amendment and that his
claim was remediable under *Bivens*. (Screening Review at 7.)  The Magistrate Judge also found that
Plaintiff had asserted a negligence claim under the Federal Tort Claims Act against the United
States. (*Id*. at 8.)

In response, on April 1, 2010, Defendants sought a dismissal or summary judgment on each
of Plaintiff's claims.  (Documents 29-30, 41-42, 50-51.)  As the parties filed their submissions with
respect to the motions, Plaintiff began to seek the appointment of counsel. (*See* Documents 15, 47,
49, 57, 59).  The Magistrate Judge denied the motions and/or requests.  On February 2, 2011,
Magistrate Judge VanDervort issued his PF&R, wherein it is recommended that this Court grant
each of Defendants' motions and dismiss this case. (PF&R  at 53.)  On the same day, the Magistrate
Judge, again, denied Plaintiff's motion to appoint counsel in this matter. (Order (Document 74)).

On March 25, 2011, this Court, "out of an abundance of caution," vacated the Magistrate
Judge's denial of the appointment of counsel for Plaintiff. (Order (Document 78)). The Court
considered Plaintiff's renewed request for counsel in his objections to the PF&R, the nature of the
claims presented, and Plaintiff's assertion that he suffered from brain damage and Aphasia. (*Id*.)
The Court appointed Attorney Lonnie Simmons as Plaintiff's pro bono counsel. (*Id*.)  The Court also

4

denied, without prejudice, the Defendants' pending dispositive motions and permitted Plaintiff's appointed counsel an opportunity to amend the pleadings, if he so desired. (*Id.*) However, the Court made no finding with respect to the disposition of the PF&R.

Within six months of the appointment of counsel, Plaintiff moved for his removal and requested a new attorney. (*See* Documents 86, 89). On March 15, 2012, this Court, *inter alia*, granted Plaintiff's letter-form motion to remove his attorney, but denied the appointment of additional counsel. (Order (Document 93) at 3) ("Based on Plaintiff's *pro se* filings, subsequent to being appointed counsel, the Court is no longer concerned that Plaintiff lacks the capacity to present his claim. Plaintiff has shown that he has the cognitive ability to clearly communicate with the Court and to clearly articulate his disagreement with his appointed counsel's opinions."); *see also* Order (Document 95) (denying Plaintiff's motion to reconsider the appointment of a second pro-bono attorney.) The Court, again, granted Plaintiff leave to file an amended complaint. (*Id.*)[4] On May 25, 2012, the Court entered a scheduling order setting this matter for trial, permitting the parties to engage in discovery and to file dispositive motions. (Scheduling Order (Document 104)).

On June 21, 2012, Plaintiff filed an amended complaint, wherein he alleged, in total that:

> 1. The Plaitiff [sic] respectfully states that this civil complaint is based on FCI Beckley's Prison Medical Staff's failure to properly diagnose his ailments which eventually led to the Plaintiff suffering a stroke, which resulted in 'open heart surgury [sic]' and permanent brain damage.
>
> 2. Due to all these injuries, the Plaintiff is disabled for the rest of his life. Compensation must be given to him, since he will have extraordinary medical costs for the remainder of his life. The evidence lies in his medical files, and permanently on his body.

---

[4] Thereafter, on two separate occasions, Plaintiff requested, and the Court granted, an enlargement of time in which to file an amended complaint. (Documents 98, 103).

5

3.  These permanent injuries have limited the plaintiff's movements, caused pain in his heart, and impaired the proper functions of his brain.

4.  To prove an injury has happened, the Plaintiff must prove that the Health Care provider failed to exercise that degree of care, skill and learning required, furthermore that failure was a proximate cause of the injury.

In this case, there is no question that the Health Care staff at FCI Beckley are responsible for the injury caused to the Plaintiff. Furthermore, they allowed the Plaintiff to suffer in pain by not prescribing him medication. The medical Doctor at Beckley deprived the Plaintiff of pain medication and proper care.  See 42 U.S.C. § 1985(3) + 1986.

([Second] Amended Complaint ("SAC") (Document 112)).  On June 25, 2012, Defendants began to challenge the sufficiency of Plaintiff's SAC.[5]  The motions are now ripe for review.

## II.  STANDARD OF REVIEW

### A.  Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of a complaint or pleading.  *Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009); *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008).  "[T]he legal sufficiency of a complaint is measured by whether it meets the standard stated in Rule 8 [of the Federal Rules of Civil Procedure] (providing general rules of pleading) . . . and Rule 12(b)(6) (requiring that a complaint

---

[5]  On July 17, 2012, the parties participated in a mediation conference before Magistrate Judge VanDervort; however, their efforts were not successful.  On August 1, 2012, Plaintiff moved for the appointment of counsel, based in part, upon this assertion that he "could not understand what was going on [during the mediation]." (Document 138.)  He further asserted that the "stroke which is at the center of debate has caused so much brain damage that even everyday living is a burden." (*Id.*)  On August 10, 2012, Magistrate Judge VanDervort considered Plaintiff's motion and found, among other things, that "it did not appear that [Plaintiff] had any difficulty communicating or was impaired in any way [during the mediation] . . . [that] it appeared that his lack of understanding was the result of his lack of experience in such matters and not any cognitive deficit or disability." (Order (Document 142) at 4).  Upon concluding that Plaintiff was capable of presenting his own case, as any other *pro se* plaintiff, the Court denied Plaintiff's motion. (*Id.*)

state a claim upon which relief can be granted.)" *Id*.  Federal Rule of Civil Procedure 8(a)(2)

requires that a pleading must contain "a short and plain statement of the claim showing that the

pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2).  This pleading standard requires that a complaint

must contain "more than labels and conclusions, and a formulaic recitation of the elements of a

cause of action will not do." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007) . In *Ashcroft*

*v. Iqbal*, the United States Supreme Court stated that to survive a 12(b)(6) motion to dismiss, "a

complaint must contain sufficient factual matter, accepted as true, 'to state a claim to relief that is

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at

570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The

plausibility standard "asks for more than a sheer possibility that a [party] has acted unlawfully." *Id*.

Rather, "[i]t requires [a party] to articulate facts, when accepted as true, that 'show' that [the party]

has stated a claim entitling [them] to relief[.]"  *Francis*, 588 F.3d at 193 (quoting *Twombly*, 550 U.S.

at 557).  Such "factual allegations must be enough to raise a right to relief above the speculative

level." *Twombly*, 550 U.S. at 555.  "Determining whether a complaint states [on its face] a plausible

claim for relief [which can survive a motion to dismiss] will . . . be a context-specific task that

requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S.

at 679.

### B.  Motion for Summary Judgment

The well-established standard in consideration of a motion for summary judgment is that

summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any material fact and that the movant

is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c)(2); *see also Hunt v. Cromartie,* 526 U.S. 541, 549 (1999); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247 (1986).   A "material fact" is a fact that might affect the outcome of a party's case.   *See Anderson,* 477 U.S. at 248; *JKC Holding Co. LLC v. Wash. Sports Ventures, Inc.,* 264 F.3d 459, 465 (4th Cir. 2001).  A "genuine" issue concerning a "material" fact arises when the evidence is sufficient to allow a reasonable jury to return a verdict in the nonmoving party's favor. *Id.*   The moving party bears the burden of showing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law. *Celotex Corp.,* 477 U.S. at 322-23.  When determining whether there is an issue for trial, the Court must view all evidence in the light most favorable to the non-moving party.   *North American Precast, Inc. v. General Cas. Co. of Wis.*, Civil No.02:04-1306, 2008 WL 906334, *3 (4th Cir. Mar. 31, 2008).   The non-moving party must satisfy his burden of proof by offering more than a mere "scintilla of evidence" in support of his position. *Anderson*, 477 U.S. at 252.  If the non-moving party fails to make a showing sufficient to establish the existence of an essential element, "there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322-23.  If factual issues exist that can only be resolved by a trier of fact because they may reasonably be resolved in favor of either party, summary judgment is inappropriate.  *Anderson*, 477 U.S. at 250.

## III.  THE PARTIES' WRITTEN SUBMISSIONS

The United States, in its submission of June 25, 2012, moves pursuant to 28 U.S.C. § 2679 for the dismissal of Charles Felts, Dominic McLain and Jeff Rowe from all alleged common law

tortious acts. (Mot. to Dismiss Ind. Defs. at 1.) The United States contends that Plaintiff has alleged a medical negligence claim, that such a claim is proper under the Federal Tort Claims Act ("FTCA"), that the FTCA precludes such a claim against federal employees acting within the scope of their office or employment, and that the United States Attorney has certified that Felts, McLain and Rowe "were acting within the scope of their employment as employees of the United States at the time of the incident out of which the claim arose." (Memorandum of Law in Support of United States Motion to Dismiss and Substitute ("Defs.' Mot. to Dismiss Ind. Defs. Memo.") (Document 115) at 1, 4.) Consequently, the United States asserts that Section 2679(d)(1) requires that Plaintiff's medical negligence claim must proceed as an action before the United States instead of against Felts, McLain and Rowe. The United States also notes that it "appears . . . that the [Second] Amended Complaint states no *Bivens* cause of action against the individual defendants." (Mot. to Dismiss Ind. Defs. at 2, n.1).

Additionally, in a separate motion, the United States moved to dismiss without prejudice Plaintiff's SAC for his failure to state a claim. (United States' Motion to Dismiss for Failure to State a Claim ("U.S. Mot. to Dismiss") (Document 116)). The United States contends that Plaintiff's medical negligence claim must be brought pursuant to the terms and conditions of the FTCA, which incorporates the law of the state where the alleged negligence occurred, which in this case is West Virginia. The Government argues that while Plaintiff has exhausted his administrative remedies pursuant to the FTCA, his SAC "is silent as to any compliance by the Plaintiff with the [screening] certificate of merit required by the [West Virginia Medical Professional Liability Act, W. Va. Code § 55-7B-1 et seq.]." (*Id*. at 2.)  According to the Government, Plaintiff has alleged that the United States "failed to timely diagnose his heart tumor, a left atrial myxoma, which is a rare primary heart

tumor." (*Id.*)[6]  In its explanation that "[a]n atrial myxoma is a noncancerous tumor in the upper left or right side of the heart[,]" the Government asserts that Plaintiff needs an expert in this action "as this rare primary heart tumor, its diagnosis, treatment and complications are not within the common knowledge or experience of lay persons."  (United States' Memorandum in Support of its Motions to Dismiss ("U.S. Mot. to Dismiss Memo.") (Document 117) at 3.)  Finally, the Government asserts that Plaintiff has acknowledged his need for an expert witness in his letter dated September 15, 2011,  to his former counsel, Lonnie Simmons, which Plaintiff filed with the Court (Document 89.)[7] (*Id.*)

Four days later, Defendants amended their motions on June 29, 2012.  (*See* Defendants' Amended Motion to Dismiss and/or for Summary Judgment ("Defs.' Am. Mot.") (Document 120)). Defendants maintain that, as individual defendants, they should be dismissed and the United States substituted as the party defendant.  However, the Defendants also respond to the Plaintiff's reference to 42 U.S.C. §§ 1985 and 1986 in his SAC. (SAC, ¶4)  (Plaintiff alleges that "[t]he medical Doctor at Beckley deprived the Plaintiff of pain medication and proper care. See 42 U.S.C. § 1985(3) + [sic] 1986.")  In so doing, Defendants renew their motion to dismiss and/or for summary judgment (Document 41) and argue that Plaintiff's SAC fails to comply with Rule 8 of the Federal Rules of Civil Procedure as to any *Bivens* claim or claims pursuant to Sections 1985 and 1986.  (Defs.' Am.

---

[6]   Attached to the United States' motion is the Bureau of Prisons' letter of October 31, 2008, denying Plaintiff's administrative tort claim (Ex. 1), various articles about myxomas (Ex. 2-4) and a link to a website video which shows a myxoma. (Ex.5.)

[7]   On June 28, 2012, Plaintiff was notified, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that he had the right to file a response to the United States' Motions (Documents 114 and 116) and to submit affidavits or statements subject to the penalty of perjury, exhibits, and/or other legal or factual material supporting his positions and issues in the case as they are challenged by the United States; that he had to file such response by August 3, 2012, and that if he failed to respond to the United States' motions his pleading would be subject to dismissal.  (Document 119).

Mot. at 3.)   Defendants argue that "the bare citation to Section 1985(3) is, as a matter of law, insufficient to state a claim for a Section 1985(3) violation and insufficient to survive a motion to dismiss." (Memorandum of Law in Support of Defendants' Amended Motion to Dismiss and/or for Summary Judgment (Defs.' Am. Mot. to Dismiss Memo.") (Document 121) at 2.)   Defendants further contend that if Plaintiff's Section 1985 claim fails, his Section 1986 claim, which is predicated on a successful Section 1985 claim, fails as well.   Finally, Defendants assert that Plaintiff has not exhausted his administrative remedies for any civil conspiracy of Defendants, which requires the dismissal of any such claim. (*Id*. at 2-3.)[8]

On July 25, 2012, Plaintiff filed his own motion seeking the denial of the United States' requested relief.  (Plaintiff's Motion to Deny United States's [sic] Motion to Dismiss and Substitute (Document 135)).   Contrary to the United States' contention, Plaintiff asserts that he has filed a *Bivens* action against the Defendants "in their individual capacities due to their gross negligence and medical malpractice[,]" that the "U.S. Attorney wants the United States to be the plaintiff [sic] due to the fact [that] the Plaintiff must have consent to file suit against the United States," and that he exhausted his remedies prior to "fil[ing] suit."  (*Id*. at 1-2.)  In response to the argument that he failed to state a claim for which relief could be granted, Plaintiff argues that proof of deliberate indifference can be found in that the "medical staff, Jeff Rowe, and Dr. McLain, allowed [him] to suffer a stroke, after he repeatedly went to sick call, and sought medical care." (*Id*. at 2.)  Plaintiff also argues that the "staff withheld proper medical treatment from [him.]" (*Id*.)  Plaintiff contends

---

[8]   On July 2, 2012, Plaintiff was notified, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), that he had the right to file a response to the Defendants' Amended Motion (Document 120) and to submit affidavits or statements subject to the penalty of perjury, exhibits, and/or other legal or factual material supporting his positions and issues in the case as they are challenged by the United States; that he had to file such response by August 3, 2012, and that if he failed to respond to the motion his pleading would be subject to dismissal.  (Document 122).

that it is the actions by "these two individuals in their individual capacity, [that] caused gross medical malpractice, and harm to come to the Plaintiff, that he will never fully recover from." (*Id.* at 3.)  Plaintiff makes no arguments in response to the Defendants' contention that he alleged an FTCA claim and that the same should be dismissed for his failure to obtain a certificate of merit.

To the extent that Plaintiff's motion appears to address some of the arguments made by Defendants in the United States' Motion to Dismiss Defendants Charles Felts, Dominic McLain and Jeff Rowe and Substitute the United States (Document 114) and the United States' Motion to Dismiss for Failure to State a Claim (Document 116), the Court will construe the *pro se* submission as an opposition to that motion.[9]  To date, Plaintiff has not filed any response to the Defendants' Amended Motion to Dismiss and/or for Summary Judgment.[10]

## IV. DISCUSSION

A person aggrieved or injured by a federal official has two separate avenues of relief: 1) pursuit of a common law tort claim pursuant to the FTCA, or 2) a *Bivens* constitutional tort claim against the individual federal official.  If one pursues the first avenue, the defendant is the United States.   At the outset, the Court observes that Plaintiff disputes the nature of the claim alleged in his SAC.  In opposition to the Defendants' assertion that his current pleading contains only a medical negligence claim, and not a *Bivens* cause of action against the individual defendants, Plaintiff contends that "he has filed a *Bivens* action and has sued the Defendants in their individual capacity due to their gross negligence and medical malpractice . . . [and] . . . his constitutional right

---

[9]   The Court will refer herein to this document as "Pl.'s Opp'n."

[10]   On July 10, 2012, the United States filed a motion for summary judgment (Document 125).  A review of the docket in this case reveals that a *Roseboro v. Garrison* Order was issued on July 11, 2012, wherein Plaintiff was given until August 9, 2012 to file an opposition or other response.

to be free from Cruel and Unusual Punishment." (Pl.'s Opp'n. at 1.)  The record in this case demonstrates that Plaintiff's original complaint (Document 1) and first amended complaint (Document 6) contained allegations with respect to both a *Bivens* Eighth Amendment claim and an FTCA claim.  Indeed, the Magistrate Judge on February 17, 2010, upon evaluation of Plaintiff's pleadings pursuant to 28 U.S.C. § 1915A, concluded as much.  (*See* Screening Review at 7-8) (finding that Plaintiff essentially claimed Defendants violated his rights under the Eighth Amendment, remediable under *Bivens* and asserted a viable claim under the FTCA).  However, on June 21, 2012, Plaintiff, with permission of the Court, amended his pleading for a second time.  In so doing, he has alleged that FCI Beckley's Prison Medical Staff failed to "properly diagnose his aliments which eventually led to the Plaintiff suffering a stroke, which resulted in 'open heart surgury [sic]' and permanent brain damage." ([Second] Am. Compl., ¶ 1.)  Plaintiff contends that his "injuries" caused him pain in his heart, impaired his brain function, and limited his movements. (*Id.* ¶ 3.)  As a result, Plaintiff contends that he is "disabled for life." (*Id.* ¶ 2.)  Plaintiff further alleges that, to prove an injury, he must prove that the "Health Care provider failed to exercise the degree of care, skill and learning required [and] that failure was a proximate cause of the injury." (*Id.* ¶ 4.)  A liberal reading of this *pro se* pleading assuredly establishes Plaintiff's attempt to assert a claim of medical malpractice against various federal employees.  However, an Eighth Amendment *Bivens* claim was not asserted.  In the motions at bar, Defendants challenge the sufficiency of Plaintiff's claim and move for a dismissal.  However, before the Court considers Defendants' arguments with respect to the medical malpractice claim, the Court will review Defendants' contentions with respect to the balance of the statements included in Plaintiff's SAC.

13

*A. Plaintiff's Allegations of Civil Rights Violations and the Denial of Pain Medication*

Plaintiff, in the final two sentences of his SAC, alleges that he suffered from pain because the "Health Care staff" failed to prescribe him pain medication and that the "medical Doctor at Beckley" deprived the plaintiff of "pain medication and proper care." (SAC at 2.) To support this assertion, Plaintiff cites to 42 U.S.C. § 1985(3) and 1986. With respect to a civil conspiracy to interfere with a person's civil rights, the Fourth Circuit Court of Appeals has instructed that, in order to establish a cause of action for a conspiracy under Section 1985, a plaintiff must assert: (1) a conspiracy of two or more persons, (2) who are motivated by a specific class-based, invidiously discriminatory animus to (3) deprive the plaintiff of the equal enjoyment of rights secured by the law to all, (4) and which results in injury to the plaintiff as (5) a consequence of an overt act committed by the defendants in connection with the conspiracy. (*Unus v. Kane*, 565 F.3d 103, 126 (4th Cir. 2009) (citing *Simmons v. Poe*, 47 F.3d 1370, 1376 (4th Cir. 1995))).[11] Defendants move for a

---

[11] Section 1985 provides that:

> If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; or for the purpose of preventing or hindering the constituted authorities of any State or Territory from giving or securing to all persons within such State or Territory the equal protection of the laws; or if two or more persons conspire to prevent by force, intimidation, or threat, any citizen who is lawfully entitled to vote, from giving his support or advocacy in a legal manner, toward or in favor of the election of any lawfully qualified person as an elector for President or Vice President, or as a Member of Congress of the United States; or to injure any citizen in person or property on account of such support or advocacy; in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators.

42 U.S.C. § 1985(3).

dismissal or summary judgment as to "any *Bivens* claim or claims pursuant to Sections 1985 and 1986" on the grounds that Plaintiff's SAC fails to satisfy Rule 8 of the Federal Rules of Civil Procedure and that Plaintiff has failed to exhaust his administrative remedies.  To date, Plaintiff has not responded to the Defendants' request for relief.

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2). This pleading standard requires that a complaint must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  (*Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 555 (2007)).  Moreover, the Fourth Circuit Court of Appeals has concluded that "the law is well settled that merely conclusory allegations of conspiracy, unsupported by a factual showing of participation in a joint plan of action, are insufficient to support a [S]ection 1985(3) action against a motion for summary judgment[.]" (*Simmons*, 47 F.3d at 1376.)  Further, to prove a Section 1985 "conspiracy," a plaintiff "must show an agreement or a 'meeting of the minds' by defendants to violate the [plaintiff's] constitutional rights."  (*Id*.) (citation omitted.)

Even if this Court assumes, in this instance, that Plaintiff has exhausted his administrative remedy for a civil rights claim, the Court finds that dismissal of the claims is proper.  Plaintiff has failed to plausibly allege any of the elements of a Section 1985 claim.  He references that a medical doctor at Beckley deprived him of pain medication and proper care, but he does not allege whether this doctor is his medical doctor at the prison or the doctor treating his aliments at the local hospital where he was treated in March, 2007, or that he denied pain medication or proper care during a specified time period.  Importantly, he also does not allege any facts with respect to the members of any conspiracy or their motivation by a specific class-based, invidiously discriminatory animus.

15

This Court continues to be mindful that Plaintiff is proceeding in this litigation *pro se* and that his pleading is accorded a liberal construction. However, such a construction does not allow this Court to ignore "a clear failure in the pleading to allege a federally cognizable claim." (Uwasomba v. Jett, Civil No. 3:12CV213, 2012 WL 3113169, at *3 (E.D. Va. July 31, 2012) (citing *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990))). There must be more than a fleeting reference to properly set forth a claim. *Beaudett v. City of Hampton*, 775 F.2d 1274 (4th Cir. 1985), *cert denied.* 475 U.S. 1088 (1986) ("Even in the case of pro se litigants, [district courts] cannot be expected to construct full blown claims from sentence fragments."). Therefore, the Court finds that Defendants' motion to dismiss the Section 1985 claim (Document 120) should be granted.

Plaintiff also purported to assert a cause of action pursuant to Section 1986.[12]  A Section 1986 claim may be maintained against any party with knowledge of a Section 1985 conspiracy who fails to prevent the harm. Because this Court has found that Plaintiff failed to allege a claim under Section 1985, his Section 1986 claim must also fail and is, consequently, dismissed. (*See Trerice*

---

[12] A Section 1986 claim allows for:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action; and if the death of any party be caused by any such wrongful act and neglect, the legal representatives of the deceased shall have such action therefor, and may recover not exceeding $5,000 damages therein, for the benefit of the widow of the deceased, if there be one, and if there be no widow, then for the benefit of the next of kin of the deceased. But no action under the provisions of this section shall be sustained which is not commenced within one year after the cause of action has accrued.

42 U.S.C. § 1986.

16

v. *Summons*, 755 F.2d 1081, 1085 (4th Cir. 1985)) ("A cause of action based upon [Section] 1986 is dependent upon the existence of a claim under [Section] 1985. Having affirmed the dismissal of plaintiff's [Section] 1985 claim, we also affirm the dismissal of his [Section] 1986 claim.") (internal citation omitted.).

Defendants also move for the dismissal and/or summary judgment with respect to any claim asserted by Plaintiff that he was "allowed . . . to suffer in pain by not prescribing him medication." Defendants contend that Plaintiff failed to exhaust his administrative remedy with respect to this claim.[13]  (Defs.' Am. Mot. at 2.)  In support, Defendants cite to an Inmate Request to Staff form dated June 22, 2011, wherein Plaintiff stated that the "medical staff tested various pain relievers, but neglected to test the problems [he] came complaining about."  (*Id*. at 2, n.2.) (citing Plaintiff's June 25, 2012 Letter to Court, Ex. A (Document 118) at 7.)  As stated above, Plaintiff has not responded to the assertion that he failed to exhaust his administrative remedies or offered any evidence showing a genuine issue of material fact that he was denied pain medication.  Indeed, this Court has reviewed the documents offered by Plaintiff which purport to demonstrate his exhaustion of administrative remedies with the Bureau of Prisons and finds that he failed to assert any concern or complaint that he was being denied pain medication.  By his own statement, the Medical Staff attempted to alleviate his pain by "test[ing]" various medications to combat his pain. Although Plaintiff alleges

---

[13]    The Prison Litigation Reform Act ("PLRA") requires that "[n]o action shall be brought with respect to prison conditions under Section 1983 of this title, or any other Federal Law, by a prisoner confined in jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  (42 U.S.C. § 1997e(a) (2006)); *Woodford v. Ngo,* 548 U.S. 81, 84 (2006) (requiring "proper" exhaustion of administrative remedies). "[T]he PLRA's exhaustion requirement is mandatory." (*See Anderson v. XYZ Corr. Health Servs., Inc.,* 407 F.3d 674, 677 (4th Cir. 2005)).  Pursuant to § 1997e(a), the exhaustion requirement is applicable to *Bivens* claims. (*See Hill v. Haynes*, No. 08-7244, 2010 WL 2182477 (4th Cir. June 2, 2010) (unpublished) (citing *Steele v. Fed. Bureau of Prisons,* 355 F.3d 1204, 1214 (10th Cir.2003), *abrogated on other grounds by Jones v. Bock,* 549 U.S. 199 (2007)); *Booth v. Churner,* 206 F.3d 289, 291 (3d Cir.2000)).

that he suffered in pain, there is no indication that he sought stronger pain medication and was refused such medication by the "Health Care staff."

Moreover, even if this Court was to assume Plaintiff exhausted his administrative remedy with respect to his contention that he was allowed to suffer in pain (because he was not prescribed pain medication) and made the further leap that his sole sentence included in his SAC was sufficient to raise an Eighth Amendment claim, this Court finds that Plaintiff has failed to demonstrate deliberate indifference in his treatment through pain medication.[14]  While it is clear that Plaintiff contends that he suffered pain due to the alleged failure of the FCI Beckley Prison Medical Staff to properly diagnose his condition, such an assertion of pain does not support a claim that he was denied medication or that the medication he received was inadequate, especially where there is no record of his complaint of the same.  Additionally, "[t]he Fourth Circuit has observed that an inmate's treatment may be limited to what is medically necessary as opposed to 'that which may be considered merely desirable' to the inmate." *Malcomb v. Raja*, Civil Action No.2:09-cv-0647, 2010 WL 3812354, at *1 (S.D. W. Va. Sept. 22, 2010) (quoting *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977)).  So, even if the Plaintiff believed he should receive one medication over the one supplied by the Prison, that claim, without more, is not sufficient to establish a deliberate indifference claim.  Therefore, drawing all reasonable inferences in favor of the non-moving party, the Plaintiff, the Court finds that he has pointed to no evidence in support of his claim with respect

---

[14]   To state a valid Eighth Amendment claim for failure to provide adequate medical care, a plaintiff must demonstrate that the defendant acted with deliberate indifference to a prisoner's serious medical needs.  (*Estelle*, 429 U.S. at 104.) The indifference must be objectively harmful enough to establish a constitutional violation.  (*See Farmer*, 511 U.S. at 837-40 (1994)).  Moreover, an inmate alleging an Eighth Amendment violation based on inadequate medical care must show that a prison official subjectively "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." (*Id.* at 837).

to the provision of pain medication sufficient to create a genuine issue of material fact as to the requisite element of deliberate indifference.   Therefore, Defendants are entitled to summary judgment as a matter of law.

### B. United States is the Proper Defendant

The Court's attention will now turn to the central cause of action asserted in the SAC, Plaintiff's medical malpractice claim.  When a tort action is brought against federal employees, the Federal Employees Liability Reform and Tort Compensation Act of 1988, codified at 28 U.S.C. § 2679, (frequently referenced as the Westfall Act) permits the United States Attorney General to certify that the federal employee was acting within the scope of his or her employment at the time of the incident giving rise to the claim. 28 U.S.C. § 2679(d)(1).  Upon such certification, "any civil action or proceeding commenced upon such a claim in a United States district court shall be deemed an action against the United States under the provisions of this title and all references thereto, and the United States shall be substituted as the party defendant." (*Id.*)  The Untied States Attorneys are authorized to issue these certifications on behalf of the Attorney General.  (*Martinez v. DEA*, 111 F.3d 1148, 1152 (4th Cir. 1997)).  The Attorney General or United States Attorney's certification is conclusive unless challenged.  (*Martinez*, 111 F.3d at 1153.)  Here, Defendants argue that Plaintiff's claim, as stated in the SAC, warrants the dismissal of Defendants Felts, McLain and Rowe and the substitution of the United States as a party defendant. This argument is supported by a "Certification," wherein the United States Attorney asserts that Defendants Felts, McLain and Rowe were acting within the scope of their employment at the time of the complained of incidents. (Mot. to Dismiss Ind. Defs. at 4.)  Plaintiff does not dispute this assertion in his opposition (Pl.'s Opp'n at 1-4.)  In light of the unchallenged certification, the Court finds that Defendants' requested

19

relief of the dismissal of Defendants Felts, McLain and Rowe and the substitution of the United States is proper and that the Motion to dismiss individual defendants should be granted. Defendants Felts, McLain and Rowe are dismissed from this action and the United States is now a party defendant.

### C.  FTCA Claim

The United States has waived its sovereign immunity under the FTCA to allow for actions for injuries caused by federal employees.  Specifically, a private person may seek liability and the recovery of monetary awards against the United States for "injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment." 28 U.S.C. § 1346(b). The FTCA provides in relevant part, "[t]he United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages." 28 U.S.C. § 2674.  However, "[t]he FTCA does not itself provide for a substantive cause of action[,]" instead, the "substantive law of the state[, in this case West Virginia,] where the alleged tort took place is considered for FTCA claims."  (*Unus*, 565 F.3d at 117) (citations omitted.)

In West Virginia, "[c]laims of professional negligence arising from health care practices are generally governed by the Medical Professional Liability Act ("MPLA"), W. Va. Code § 55-7B-1, et seq." (*Banfi v. American Hosp. for Rehabilitation*, 529 S.E.2d 600, 605 (W. Va. 2000)).  Pursuant to West Virginia law, a plaintiff asserting a medical negligence claim under the FTCA is required to prove that:

> (a) the health care provider failed to exercise the degree of care, skill and learning required or expected of a reasonable, prudent health care provider in the profession or class to which the health care provider belongs acting in the same or similar circumstances; and (b) such failure was a proximate cause of the injury.

W. Va. Code § 55-7B-3.  Additionally, if the claim involves allegations that a plaintiff was not properly diagnosed/treated, the healthcare provider proximately caused the plaintiff's injuries or an assessment of the same, expert testimony may be required.  (W. Va. Code § 55-7B-7) ("The applicable standard of care and a defendant's failure to meet the standard of care, if at issue, shall be established in medical professional liability cases by the plaintiff by testimony of one or more knowledgeable, competent expert witnesses if required."); *(Banfi*, 529 S.E.2d at 605-06).  Furthermore, West Virginia law requires that certain pre-filing prerequisites be met before a health care provider my be sued:

> (b) At least thirty days prior to the filing of a medical professional liability action against a health care provider, the claimant shall serve by certified mail, return receipt requested, a notice of claim on each health care provider the claimant will join in litigation. The notice of claim shall include a statement of the theory or theories of liability upon which a cause of action may be based, and a list of all health care providers and health care facilities to whom notices of claim are being sent, together with a screening certificate of merit. The screening certificate of merit shall be executed under oath by a health care provider qualified as an expert under the West Virginia rules of evidence and shall state with particularity: (1) The expert's familiarity with the applicable standard of care in issue; (2) the expert's qualifications; (3) the expert's opinion as to how the applicable standard of care was breached; and (4) the expert's opinion as to how the breach of the applicable standard of care resulted in injury or death. A separate screening certificate of merit must be provided for each health care provider against whom a claim is asserted. The person signing the screening certificate of merit shall have no financial interest in the underlying claim, but may participate as an expert witness in any judicial proceeding. Nothing in this subsection may be construed to limit the application of rule 15 of the rules of civil procedure.

21

W. Va. Code, § 55-7B-6. The primary purpose of requiring a pre-suit notice of claim and screening certificate of merit: is (1) to prevent the making and filing of frivolous medical malpractice claims and lawsuits; and (2) to promote the pre-suit resolution of non-frivolous medical malpractice claims. (W. Va. Code § 55-7B-6; *Hinchman v. Gillette*, 618 S.E.2d 387, 394 (W. Va. 2005)).

The United States contends that Plaintiff's claim is governed by the MPLA, but that he has failed to adhere to the pre-filing requirement inasmuch as he has not obtained a screening certificate of merit. The Court is, likewise, persuaded that Plaintiff's claim is fatally flawed. The Court finds that there is no dispute that Plaintiff initiated the administrative remedy with the filing of his administrative tort claim with the Bureau of Prisons. On October 31, 2008, Plaintiff's claim was denied and he filed this civil action. (Gov.'s Mot. to Dismiss, Ex. 1 (Document 116-1)). However, neither Plaintiff's SAC nor his opposition to the instant motions to dismiss contain any representation that he has obtained a certificate of merit. Moreover, he offers no pleading, affidavit or declaration from any medical professional establishing the applicable standards for the diagnosis of the myxoma and the injuries he allegedly suffered as a result of Defendant's actions. Consideration of the nature of Plaintiff's medical ailment, the discovery of a myxoma in the left atrial of his heart and his allegation that his condition resulted in a stroke will undoubtedly require the use of an expert to testify as to the applicable standard of care and to what breach of that standard proximately caused Plaintiff's injuries. Plaintiff's injuries, including his stroke and the Alphasia, are not within the common knowledge and experience of lay persons. (*Banfi*, 529 S.E.2d 600) (expert testimony is not required where the "lack of care or want of skill is so gross, so as to be apparent, or the alleged breach relates to noncomplex matters of diagnosis and treatment within

22

the understanding of lay jurors by resort to common knowledge and experience.") Therefore, he is not exempt from the requirement of the screening certificate of merit.[15]

       This case is unlike the facts alleged in *Johnson v. United States*, where the plaintiffs alleged that a surgeon failed to properly perform an operation involving implantation of penile prosthesis. *Johnson v. United States*, 394 F.Supp.2d 854 (S. D. W. Va. 2005) (J. Chambers). The district court found Plaintiffs' statement, on an SF-95 administrative claim form, sufficient to excuse the use of expert testimony where the plaintiffs asserted that the patient "suffered damages because a too large prosthesis was placed in backward" resulting in "diminished bloodflow, subsequent necrosis and infection." (*Id.* at 858.). In *Johnson*, the improper medical care was obvious given the assertion that the prostheses was too large and backward. By contrast, any finding that Plaintiff received improper medical treatment or that the FCI Beckley medical staff failed to perform the proper tests on Plaintiff when he presented to sick call must be supported by the use of expert testimony. This is particularly so where his allegations would require further inquiry with respect to the nature of the tests that should have been performed on a patient presenting with the symptoms Plaintiff experienced, whether the intended course of treatment was proper, and whether Plaintiff's myxoma

---

[15]   Section 55-7B-6 provides for an exception to the pre-filing requirement of obtaining a screening certificate of merit. In relevant part, the MPLA provides:

> (c) Notwithstanding any provision of this code, if a claimant or his or her counsel, believes that no screening certificate of merit is necessary because the cause of action is based upon a well-established legal theory of liability which does not require expert testimony supporting a breach of the applicable standard of care, the claimant or his or her counsel, shall file a statement specifically setting forth the basis of the alleged liability of the health care provider in lieu of a screening certificate of merit.

W. Va. Code, § 55-7B-6(c). Plaintiff does not assert that his claim is based upon a "well-established legal theory of liability[,]" given that he alleges that he suffered from "a rare primary heart tumor." (Gov.'s Mot. to Dismiss at 2.) The instant claim that Plaintiff was denied proper medical care, wrongfully diagnosed and that he suffered a stroke directly places the applicable standard of care at issue.

was the proximate cause of his stroke.  Although West Virginia Courts caution against certain dismissals of causes of action based on the failure to comply with the screening certificates of merit (*Westmoreland v. Vaidya*, 664 S.E.2d 90 (W. Va. 2008), this Court finds that a dismissal with leave to permit Plaintiff to obtain a certificate of merit is not warranted in this case.   This is so, where this Plaintiff has been on notice of the need for a certificate of merit since February 2, 2011, when the assigned Magistrate Judge VanDervort made the proposed finding that his FTCA claim was subject to dismissal for his failure to comply with W. Va. 55-7B-6.  (*See* PF&R ) (issued upon consideration of Defendants' dispositive motions with respect to prior versions of Plaintiff's complaint, which this Court denied without prejudice on March 25, 2011.)  Moreover, this Court is aware that Plaintiff had the benefit of the assistance of appointed counsel, even if for a limited time, during the months immediately following the issuance of the Magistrate Judge's proposed findings and recommendation.  Finally, the Court finds that Plaintiff appreciates the need for such certificate, as evidenced by his previous motions to the Court seeking the Court's payment for such expert. (*See* Documents 87-88); *see also* Order (Document 93) (denying requested relief for funds for the payment of an expert.)  Upon consideration of the length of time that this case has been pending and the time that has elapsed since the Magistrate Judge first entered his proposed findings and recommendation, the Court finds that Plaintiff has had ample opportunity to secure a certificate of merit.   The Court is mindful that Plaintiff is a federal inmate. However, the MPLA does not provide any relief for incarcerated persons, which excepts their compliance with the Act's pre-filing requirements.  An inmate, like Plaintiff, is entitled to and capable of proceeding in court with a medical negligence or malpractice claim just as any other plaintiff provided the inmate adheres to the pre-filing requirements.

Thus, upon consideration that Plaintiff's allegation involves a complex medical ailment, the Court finds that a certificate of merit is required.  Plaintiff has not obtained one and the time for doing so has long passed.  Consequently, the United States' motion to dismiss Plaintiff's FTCA should be granted.

### D.  Any Bivens Claim

Finally, to the extent that Plaintiff contends that he has alleged a "*Bivens* action" against McLain, Rowe and Felts for the "deni[al] [of] . . . [his] [c]onstitutional right to be free from cruel and unusual punishment when he "was forced to suffer as a prisoner by improper medical treatment . . . caus[ing] him further medical problems and damages[,]" (Pl.'s Opp'n at 1), the Court disagrees. First, an amended complaint generally supersedes an original complaint.  (*Young v. City of Mount Ranier*, 238 F.3d 567, 572 (4th Cir. 2001)); *see also* 6 Charles Alan Wright et al., Fed.Prac. & Proc. Civ. § 1476 (3d.ed. 2012 update) ("A pleading that has been amended under Rule 15(a) supersedes the pleading it modifies and remains in effect throughout the action unless it subsequently is modified. Once an amended pleading is interposed, the original pleading no longer performs any function in the case[.]")  A review of the record in this case reveals that Plaintiff has filed three pleadings since the initiation of this case.  (*See* Complaint for the Violation of Civil Rights under 42 U.S.C. § 1983 (Document 2)); Amended Complaint with Jury Trial Requested (Document 6); (SAC (Document 112)).  In each of the amended pleadings, Plaintiff has altered the nature of the claims in his original complaint, with his last submission wholly excluding any allegation or reference to a claim that he was treated with deliberate indifference.  Instead, Plaintiff attempted to assert civil rights claims pursuant to 42 U.S.C. §§ 1985, 1986.  Further, the Court observes that Plaintiff did not reference his previous pleadings in the SAC.  Additionally, he filed the instant

25

pleading during a period of time after which he had the benefit of counsel and was afforded several extensions of time in which to amend his pleading.  Inasmuch as Plaintiff's previous complaints no longer govern this case, and his SAC did not include any allegations with respect to a previously asserted *Bivens* cause of action regarding the claim that  he received improper medical treatment, the Court finds no such claim remains in this case.

Alternatively,  to  the  extent  that  Plaintiff  maintains  that  his  previous *Bivens* claims of Eighth Amendment violations exist, notwithstanding the submission of his SAC, the Court finds that the same would be subject to the FTCA's "judgment bar" provision.  Title 28 U.S.C. § 2676 provides that

> [t]he judgment in an action under [the FTCA] shall constitute a complete bar to any action by the claimant, by reason of the same subject matter, against the employee of the government whose act or omission gave rise to the claim."

28 U.S.C. § 2676.  The Court of Appeals for the Fourth Circuit, considering the scope of the FTCA judgment bar provision, concluded that the "provision precludes a *Bivens* claim against a government employee when a judgment has been entered on a FTCA claim 'arising out of the same actions, transactions, or occurrences' as the *Bivens* claim."  *Unus v. Kane*, 565 F.3d 103, 122 (4th Cir. 2009).  The Circuit Court explained that

> Litigants frequently face tough choices—choices that rarely come without consequence. In these proceedings, the plaintiffs chose to pursue their claims against the federal agent defendants through *Bivens* as well as under the FTCA. As such, they risked having a judgment on the FTCA claims operate to bar their **Bivens** theories. [T]he court's summary judgment award on the FTCA claims triggers the judgment bar provision of § 2676, and the plaintiffs' First and Fourth Amendment *Bivens* subclaims against the federal agent defendants are thus barred.

26

(*Id.*); *see also Sanchez v. Felts*, — F.Supp.2d —, Civil No.5:07-cv-355, 2011 WL 8007577, at *7

(S. D. W. Va. Sept. 23, 2011) (J. Johnston), *aff'd*, 2012 WL 1110800 (4th Cir. Apr. 4, 2012)

(unpublished per curiam decision) ("[W]hile Congress permitted constitutional claims to be pursued

in tandem with FTCA claims, the broad sweep of the language of § 2676 indicates that Congress

also determined that once a plaintiff elects to pursue the FTCA claim to judgment, that strategic

decision triggers application of § 2676 to 'any action'—including constitutional claims—against

the federal employee whose conduct was at issue in the adjudicated FTCA claim.")  This is so, even

if the FTCA and *Bivens* claims are brought, like in this case, initially, in the same suit and the FTCA

claim is dismissed for a plaintiff's failure to exhaust his administrative tort remedy.  (*Sanchez*, 2011

WL 8007577, at *2, 8.)  Here, it is beyond dispute that the allegations that would support both

Plaintiff's FTCA and *Bivens* claims arise as a result of the medical treatment he received during the

months of January to March, 2007, when he alleges he was denied adequate medical treatment and

allowed to suffer a stroke after repeatedly going to sick call to seek medical care. Therefore, the

Court finds, to the extent that Plaintiff's *Bivens* claim survives his SAC against Felts, McLain and

Rowe, Plaintiff's *Bivens* claim is precluded by the FTCA judgment bar, Section 2676.

Consequently, such claims should be dismissed even if they survived Plaintiff's amendment.


*V.  CONCLUSION*

For the reasons set forth above, the Court does hereby **ORDER** that the United States'

Motion to Dismiss Defendants Charles Felts, Dominic McClain and Jeff Rowe and Substitute the

United States (Document 114) be **GRANTED**.  The Court **ORDERS** that the United States' Motion

to Dismiss for Failure to State a Claim (Document 116) be **GRANTED.**  Further, the Court

**ORDERS** that the Defendants' Amended Motion to Dismiss and/or for Summary Judgment (Document 120) be **GRANTED**.  Additionally, the Court **ORDERS** that Plaintiff's Motion to Deny the United States' [sic] Motion to Dismiss and Substitute (Document 135) be construed as an opposition to Documents 114 and 116.  As a result of the rulings herein, summary judgment is entered in favor of the Defendant with respect to Plaintiff's claim that he was denied pain medication.  Plaintiff's claims are **DISMISSED WITH PREJUDICE**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER:         August 22, 2012

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA